Good morning. May it please the Court, Chief Judge Gregory, Judges Winn and Thacker. My name is Norman Thomas, and I represent the interest of the 8.37 acres in this case. I think, could you pull the microphone up a little closer to you? I think it's just difficult to hear in this courtroom. Yes, Your Honor. Thank you. And the family that owns it, the Terry family. The District Court relied upon an incorrect central premise in granting the Rule 50 and 59 motions made by Mountain Valley. The record does not support the central premise that the jury came to the conclusion that a commercial highest and best use of the property, and then applied a residential diminution of value. Mr. Gruel, the landowner's expert, testified on cross-examination that the easements had no effect upon a wind farm. And Mountain Valley argued that specific point to the jury. That's at appendix page 993. So if the jury had concluded that there was a commercial highest and best use for a wind farm, the only verdict that they would have received for just compensation would have been the value of the temporary easement and the about three acres of permanent easement. And is there a way the jury could come up, could have come up with the $560,000 verdict unless they relied on Gruel? Yes, ma'am. And how is that? I can tell you in less than a minute and make the point. If you look at Mr. Gruel's lowest residential comparative sale, it was the Bent Mountain property not two miles from this property. He estimated that one, the lowest one, at $2,594. What the jury did, and their arithmetic is easy to follow here, they took that amount and multiplied it by 560 acres. Then they added to that figure $281,400, which was the depreciated value of the house and the other outbuildings on the property. They then utilized the 30% diminution of value. That comes out to about $520,000. Then they added Mr. Thompson's value of the temporary easements, $3,117. And if you work through that math, Your Honors, the outcome of that arithmetic is $523,329. It comes within $2 of their verdict. And the point that I'm making to the court's question is not that we can get into the jurors' minds. That was the district court's error. But to show and make the point that this jury verdict is fully supported by the record utilizing that residential comparative sale and all residential related factors. Let me ask you a preliminary question. We're here with a case in which Mountain Valley Pipeline wants to condemn a portion of this property to put a pipeline through. And the question is, how much is just compensation? Is that a question of state law or federal law? Your Honor, our position is that just compensation should be determined through substantive state law. And that is why we did. When? It was asked for prior to final judgment and it was fully briefed. All through the whole trial process and everything, it was only at final judgment you asked for? It was prior to final judgment. It was about, I can't give you the exact number of days, but it was at about the time that the district court granted the rule 50 and 59 motions. What did the district court apply, federal or state law? Federal. So is that an error in and of itself if we find state law should have applied here? Yes, it is a separate question from the verdict related issue. And our position is that the district court erred in not hearing and granting the motion for interest and costs under Virginia law. Was that the post trial hearing in which you brought this up? No, no, that was. Was it after? It was after the rule 50 and 59 hearings. You've been through all these hearings and you finally bring up state law. Your Honor, I'm not saying. Why didn't you bring it up then? Because there's not much difference between it except I guess those non-attorney fees and that sort of thing. Well the motion was made prior to final judgment in time for briefing to occur. And our assertion there is, although it may have been a bit late in the game, it was not too late in the game. So it wasn't forfeited is what you want to say? Correct. It was preserved. We made the remedy. Are you going to ask us to remand for that reason and sort of go back and do it under state law? That is part of the relief that we are requesting. We've asked the court to adopt the same standard that the third, sixth, and tenth circuits. In fact, every circuit that has considered this question has indicated that under the Natural Gas Act, the correct federal rule is to adopt state law for purposes of just compensation determination. What's the difference besides those little fees? What is it, up to like $7,500 you get for an expert? There are some differences and it's going to vary from Virginia to other states. What's the big difference? What's the reason you think that these compensations would differ under state law than federal law? There are more expenses and fees that are paid for under state law to make the owners whole and also there's a higher interest rate. So it does make a difference. There is going to be a monetary difference. What about the discretion of the jury? Is it greater under state law, a broader consideration or a narrower consideration of the same? The considerations are basically the same. To put the owner, just compensation to be to put the owner in the same position the owner would have been if the project hadn't occurred. So just compensation is not substantively different, but the fees, the interest, and the expenses that are afforded under state law, at least as to Virginia law Last question on that. This court has not decided that, whether it's state or federal, as I understand it. But have other courts done so? Yes. Yes. Three other circuits have decided that state law should be adopted for the just compensation determination under the Natural Gas Act. And we've cited them in our briefs. It's the East Tennessee case, the Bison Pipeline case, and the Columbia Gas case. And each one of those courts, Your Honor, went through the U.S. versus Kimball Foods analysis. And they made three findings, each of them. First, that the Natural Gas Act does not require a uniform standard, a federal uniform standard. Secondly, that adopting state law will not frustrate the purposes of the Natural Gas Act. And third, that a use of a federal common law uniform standard could disrupt commercial relationships that are based on concepts of property as defined by state law, which can vary from state to state. So our position is that those circuits have correctly decided the issue. That U.S. versus Miller is confined to those cases in where the United States is the condemning authority. And that this court would rightfully adopt the same rule, the federal rule of adoption of state law for just compensation under the Natural Gas Act. I'd like to turn for a moment to this issue of waiver of Mountain Valley Pipeline. They did approbate and reprobate at trial, and our position is that they waived the grounds of their Rule 50 and 59 motions. And the Mantec case, XRL Cody versus Mantec, which both parties have cited, is not controlling here. In the Mantec case, this court was faced with a decision of the proper retaliation standard of proof required under both the False Claim Act and the Defense Contractor Whistleblower Act. It was clear at that time to the district court that under the Whistleblower Act, it was a contributing factor test with respect to retaliation. But it was an open question at that point in time from the district court's perspective as to whether the False Claim Act was a but-for test or a contributing factor test. And at the end of the evidence, the parties and the court agreed to submit to the jury to avoid their confusion during instructions that applied the contributing factor test under both federal acts, reserving specifically the Rule 50 question as to whether the False Claim Act required a but-for test. This court ultimately decided that the False Claim Act did require a but-for test and a contributing factor test was the correct one under the Whistleblower Act. And they also ruled that Mantec had not waived the issue by agreeing to simpler jury instructions simply to avoid confusing the jury. I would think the Smoot case has a particular application to your point of view. We have cited it passum through our briefs, Your Honor. It is a very important case. Coming down to the issue is pretty straightforward. I mean, you've got experts that are testifying on certain figures, but that jury verdict doesn't look anything like those figures. So then you begin to figure out, as you alluded to initially, there's a way you can get there, and Smoot seemed to indicate you can kind of mix it up a little bit. Well, not only can you get there, but what you see is a cross-section of every testifying appraiser's opinions. They used Mr. Gruelle's lowest comparable. They used Mr. Schweitzer's 30 percent diminution of value. And they utilized Mr. Thompson's value of the temporary easements. The trial court said Mr. Gruelle's opinion wasn't reliable. Why come they can't rely upon that for a new trial? Actually, Your Honor, the court did not make, the district court did not make a finding that Mr. Gruelle's testimony was unreliable. Its central premise, its one point was that the jury had assigned a highest and best commercial use and then applied a residential diminution of value. And the arithmetic that I brought out to Judge Thacker's question shows that not only did they use a residential comparison, of the 12 residential comparisons they received, they used the lowest one that Mr. Gruelle had testified to and then applied all residential factors to get to that final outcome. So you're saying that in your analysis that you gave me earlier, the jury didn't use the part of Gruelle's testimony that was called into question. That's correct. And Mr. Gruelle did testify. Part of his testimony was valid, for lack of a better word, and the other part was sort of not. Essentially, there were alternatives presented. Mr. Gruelle testified that it might be difficult to get the permits necessary for a wind farm due to the political atmosphere in the Roanoke Valley area. He also testified, as the district court recognized, that the property is well suited to rural residential use, which is its current use. Both Mr. Schweitzer and Mr. Gruelle testified to the negative effects of the easements on residential use. And Mr. Sherman, my colleague, argued that point to the jury at several points during his closing arguments. So in other words, there is no plausible conclusion that they applied the highest and best use as a commercial wind farm. That would have resulted in nothing more than a nominal verdict. They necessarily applied residential use and residential comparisons to come out to the same thing. Both Mr. Gruelle and Mr. Schweitzer were asked about the same attributes of the property, in terms of an apples-to-apples examination of each of these experts as to the negative effect of the easements. They both agreed that all of the same factors were negative. And that justifies the jury's use of Mr. Schweitzer's 30% diminution in value. Because both he and Gruelle agreed that the same factors constituted the negative effects of these easements on the property's value for residential use. I have very little time left. I'll answer any questions that the court has at this point. Thank you, Mr. Thomas. Mr. Massey? Good morning. May it please the court, my name is Wade Massey for Mountain Valley Pipeline. What happened in this case is this. The landowners, of course, want the highest before value as possible. You want to start there. And they hired an appraiser, Mr. Gruelle, who went out and appraised the property as a wind farm, commercial use. Got the value way up. Got it up to $1.9 million. And then he opined that the project, the Mountain Valley project, destroyed the wind farm. It couldn't be used for a wind farm anymore. It had to have a residential use which he deemed inferior in value. And so he had a big number. I think we're all familiar with the facts. I sort of want to talk about the law as applied to the facts of this case. How do you get around our smooth opinion that says if the jury went out and viewed the property and came up with a verdict, which they did here, we can't invade the province of that verdict? Well, we cite the smooth case as really establishing the standard for review in cases like this, that the verdict should be within the range of credited testimony. And it wasn't smooth. And so it was upheld. Well, opposing counsel in response to my first question gave me what sounded like a valid analysis of how the jury could have come up with a verdict that was within the range of credited testimony. That is, it didn't, and it did not include that part of Gruelle's testimony that was obviously invalid. So do you disagree with his math? Well, I haven't done that particular math. That's the first time I've heard it. Yeah, that's the first time I've heard it, too. I tried to do the math and couldn't figure it out. So I won't take on the math, but I do take on the concept that Gruelle was not used. I mean, that was the number. That was the big number for the before value. When you say that was the big number for the before value, you mean the invalid? Well, he was permitted to give a before value. He came in. I guess what I'm asking is, what was the big number? Like, which number? His number was 1.9 million before, but that's not the measure of damages. I mean, the measure is diminution in value. So you have to have a second number to go with that. And his second number was huge to start out with, but at trial he couldn't use it because he found out that the wind farm was completely unaffected by the project. So his actual number on his highest and best use would have been zero. So what the landowners did was call another appraiser, a different appraiser, who appraised it not as a wind farm, but as residential. And they asked him, what percentage diminution would you use in a case like this? And he said, well, I would use 30%. But they never asked him what his before value was or his after value. I did that on cross-examination. And that's where you get the 261,000. So the second appraiser that they called, who had a percentage, formed the basis for their argument at trial of what they were entitled to. And so they take the high number of Gruelle and the percentage of this second appraiser based on a different theory of value, and they say, well, 30%... Who do you say they? Are you talking about... My worthy opponents. Okay. You're not talking about the jury. You're talking about opposing counsel. I apologize for the confusion. I was talking about my opponent. That was their argument at trial. Right. And your argument at trial, I assume at trial before the jury, you made the arguments about how you can't mix and match these experts and Gruelle's not to be relied upon? That's correct. We made a motion... Well, then, if the jury heard all that and you cross-examined, as you said, you brought out the problems with Gruelle on cross-examination, how is it that we can now sit here and second-guess the jury's verdict? Even us sitting, the exercise I asked opposing counsel to go through, to go back and try to reverse-engineer how the jury came up with that verdict, that seems like an invasion of the jury process to me. How is that not an invasion of the jury process? Well, I think it's all within the context of Rule 50, which is, of course, the standard for the district court and de novo review in this court. So the questions are, and they come up on a regular basis in civil litigation, is the verdict supported by substantial evidence? And if it's not supported by substantial evidence, then it's not only the response... Assuming opposing counsel's math is correct, and the way you could get to the number he gave me that was pretty close, assuming that math is correct, is it supported by substantial evidence? No, Your Honor. Why not? Because... Because you can't use Gruelle at all? The jury couldn't have credited Gruelle at all? Is that your argument? He did not give the two components. He only gave one component. So he gives a high before value and no after value. He was never asked, how would you value this property as a residential use? He never was asked, how would you diminish this property as a residential use? His report... Because the other expert did that, right? Well, they called the other expert to try to grab the number, the multiplier, to go against Gruelle. So that is what happened. But to answer your question, Judge Thacker, in valuation cases, and it's not just condemnation, in valuation cases, the court has applied the standard range of credited testimony. And that's been in several cases. The Legacy case is one that's been cited in the briefs, and that was applied in a commercial dispute, where the issue was, what was the amount of damages? And in that case, the jury had a verdict for the plaintiff, but it was below even the defendant's evidence of what the damage was. And under Rule 50, that verdict was set aside, and a higher verdict instated there. And we submit that those same rules, these are basic rules for really all civil cases, should apply here. And the court, the district court, properly concluded that it was not supported by substantial evidence, and set it aside. The court also made an alternative ruling that you've seen, that it was against the greater weight of the evidence. And of course, the standard of review on that is different. It's an abuse of discretion standard. Those decisions are typically left to the district judge to decide whether a verdict is against the weight of the evidence. And so, that is the alternative ruling that the court made. And we submit that also should be affirmed. Just a conversation. Is that federal law or state law? That's the biggest issue in this case. And it came up right at the very end, as you said. When did it come up? There was a jury verdict. There was a post-trial motion for attorney's fees. The jury was not instructed on state law. It was instructed on the federal law. My memory is that all of the cases that we cited and submitted, and federal jury practice instructions, they were all a federal formulation of just compensation. Now, I'm not saying that's completely different from Virginia. Because, as counsel said, it's a basic before and after approach. It allows for fees, and then it seems to be a provision that the jury had broader discretion to, doesn't it? I haven't compared the standard of review of verdicts in state and federal. I don't think that would be affected in any event. Do you think the issue was forfeited? I mean, it's not a jurisdictional issue, as well as state and federal's use. Was it forfeited by the delay in bringing it up? Certainly, we think that when the landowners made their post-trial motion for attorney's fees, they based it on federal law. They asked for attorney's fees based on federal law. And that was the way we argued it. Does federal law provide for attorney's fees? Does federal law? Well, our opponents said it did. We said it didn't. The judge said it didn't. And then, while that is pending, the judge has it under advisement, out of the blue comes this supplemental statement of authorities from the landowner, just a random filing, straight in the district court. And it says, well, actually, we want you to consider state law as applying. And we made a motion to strike that filing as not really being a supplemental filing. It's just another argument that they should have made earlier. And in the district court's opinion, that was stricken. So that filing was stricken. But that didn't stop it. They later filed another motion. And that's the one that they're seeking review of here. So it was raised. And that motion hasn't been ruled upon by the district court yet, right? Well, in a way, it was. I mean, their original post-trial motion was ruled upon. Their supplemental authorities was stricken. And then this other motion comes in at the end without leave or permission. So this other motion at the end, has it been ruled upon? There was no direct ruling on that, Your Honor. You're right. There was no direct ruling on that. Is this a final order? Is this interlocutory? Well, it certainly went down as a judgment. It went down as a judgment from the district court on just compensation and the vesting of the interest. And so there is an order, a final order on that, yes, sir. You said you have a pending question as to whether or not they're entitled to fees, correct? Isn't that a part of the judgment? I haven't looked at that particular point. Well, you should, because jurisdiction is what we look at first. Certainly, I understand that. I understand that. Let me ask this question. Was there testimony from an expert as to the residential value of the property? There was, Your Honor. All right. And that was not stricken? No, that was a value of $850,000, I believe, before. And a lower number after. And the diminution from that expert, which was the highest diminution from any expert in the case, $261,000. And that is what the court based its judgment on. That was the highest number. So you're saying there is no way, as Mr. Thomas just told us, that a juror could have gotten to his math. I know you say you haven't done the math. But it's basically, I mean, you could say hodgepodge or it's coming from different baskets. But are you saying that just, as a matter of fact, what went to the jury, they didn't have those figures from any expert or experts that could have come up with that? Only by mixing and matching numbers. And why can't a juror do that? Well, that's the question. It seems like the jury, I think that's an easy one. Anything that comes before the court and is admitted as evidence, it's before the jury, isn't it? Well, the problem is really best illustrated by this case itself. If you take a high before value of $1.9 million and zero diminution in value. It's got no diminution in value. And then you get a real estate expert who says, no, I'm not valuing it as a wind farm. I'm going to value it as a residential property. It has a lower value. And he diminishes it some. He gives it a diminution of 30%. Well, how do you go above that? How do you go above that if the highest before value before is zero diminution and you've got the secondary appraiser and he has a residential use but his number is 261,000. So we submit you really can't go above that based on this record in this case. Okay, you're saying based on this record. But going back to Judge Gregory's question, do you want us to adopt a rule that a jury in a condemnation case cannot combine expert valuation testimony? They can do that, can't they? The rule, and we accept this entirely, is that the jury is not bound by the testimony of any one particular appraiser. They can look at these appraisers and look at their numbers and reach a judgment about those based on the evidence. But what they can't do is go outside of those numbers altogether. So they don't have to take any one appraiser and say I picked this one versus any other appraiser and say I picked that one. And how is it we know they went outside of these numbers altogether in this case? Because grill is zero and the next highest is 261 and the verdict is 523. So they're outside the range of any credible credited testimony. The 850,000 that Schweitzer came to, the record looks like he based it upon 400 acres when it looked like there were 560. Is that an error or is it 400 acres? It was not decided in this case what the number of acres are. There was testimony from the landowner, Mr. Terry, who said the number of acres is just a guess in this track. It's never been surveyed. His deed says 400. The county GIS for the taxes says 560. What did the experts use? They used both. One expert used I go by what the deed says. If you don't have a survey, I'm going to go by what the deed says. And that was the 261 appraiser. What did your expert use? He used the higher number, gave the landowner the benefit of the doubt. The 560? He did. Which is the number opposing counsel used in the calculation he gave me. That would be 560. Right. Which is the one your expert also used. Correct. Okay. That's true. So if you use 560, then that's going to move Schweitzer's just compensation number higher than 261. That would be correct if he did that. Now, he didn't do it. And one can extrapolate and say what would Schweitzer be if he had used 560? And it comes out to be about 320 something. I would think that a deed probably does have a guess on someone went out there and did it. But you were saying it used that GIS system? Isn't that that satellite system? Is that the one that images it? That's a pretty accurate thing, isn't it? Well, it depends on where you are. In some jurisdictions, I would say no. I think in West Virginia it's a little different. Well, Southwest Virginia may be a little different. But it's not entirely accurate. No, it's not. So on the state and federal law, I would just say this. That issue doesn't come up unless you reinstate this verdict. If you reinstate the verdict, the jury verdict, then you might have this issue if they haven't waived everything already. What is the remedy? Do you want us to just institute the lowest amount without regard, which at Schweitzer's would be 261, but he did it on 400. It could have been 560, which would take it much higher. Or do you just want a new trial? What is it? Well, we ask your honors to affirm Judge Dillon's decision, which set aside the verdict of the jury and entered judgment for 261, and in the alternative, granted a new trial. We ask that that be affirmed so that the final judgment would be 261. If you get a new trial, would that be under federal law or state law? We submit it to be under federal law. That's the way we've tried all these cases. No other circuit has done it that way. None that I know of, no other district court, we're the only one where it's being done, but this court has not spoken to it. I agree with that, but it makes sense that it is federal law. This is a federal right of condemnation. So let's say we're talking about a difference of 525. If you did add in the 160 more acres of swipes, it could possibly go to 350. You're getting in the range where it's kind of $200 a lot. I'm going to ask a practical question. Why don't you settle this thing? I mean, it just doesn't look like to me anybody's winning on this. It's taking a lot of time, effort, and all. I mean, if those are the figures you're working with, I don't know about this business of the state law and the fees on it, because that's a whole different ballgame. You say we shouldn't get there, but state law does allow for certain things, and the law looks pretty clear to me that state law would likely control here. There are a lot of cases on it, a lot of circuits on it. In fact, there's three or four of them I know that are directly on point that says it's hard to go against them. But setting that aside, I'm just putting a little seed out there to say sometimes good lawyers like this who come to the court can put their heads together and help your clients come to a more commonsensical resolution here, which can be done before we do something here. But once we do it, you're going to be stuck on what we do. I appreciate your advice on that, and we have settled 99.9% of the cases. This is a big company. What you're talking about here is peanuts to this company. It's nothing. It's not even peanuts. I mean, you're talking about building a pipeline that's going. It is incredible what that thing costs and what we're dealing with here, the time and effort expended here. I just throw that out. It's something to consider, but I'll leave that on the table for you to work out if you want to. All right. Thank you very much. Appreciate your time. Thank you for having me. Thank you, Mr. Massey. Mr. Thomas, do you have some time reserved? Yes, sir. Five minutes. Okay. Mr. Thomas, I know you don't have a lot of time, so I'm going to get to my question. Would you be so kind, and you must admit in terms of these numbers are sort of late to counsel, right? You didn't give him your argument as to how he could come up with nearly the same jury amount, right? He didn't have an advance. Our arguments principally on this issue were in the reply brief and that it indicated that they had utilized the residential component and that they had derived their verdict all from residential components. You know, you have to be very careful about bringing something up first in your reply brief. Well, I was responding to their position, which is that of the district court, that they utilized the highest and best commercial units. It seemed to me that would have been a lead for me in terms of you've got a way to show a path to affirmance, and that would have been up front. But that aside, let me ask this question. Would you please very slowly, at least for me, my two colleagues are quicker than I am, but how you again and tell me what expert and what number you are to get to this amount? I will trace it for you, Your Honor. Thank you for that opportunity. All of the comparables offered to this jury were residential, including all of Mr. Grewell's. He said he couldn't find any commercial comparable sales, so he used all residential. Of his four residential sales, one of them was about two miles from this property, Bent Mountain. And its per acre was $2,594 per acre. That was the lowest of Mr. Grewell's, actually lower than what the $2,900 per acre he said for this property. So starting there, if you multiply 2,594 times the 560 acres, and there was a judicial finding of 560 acres, so that's good enough for us. If you multiply, make that multiplication, 560 times 2,594, then that was Mr. Grewell's comparable. Mr. Grewell also said he separately valued the improvements because they were unique. There's an historic district overlaying this property, and he valued the house and the outbuildings at an 85% depreciated value at $281,400. So if you take 2,594, multiply it by 560, then add 281,400. You take that sum, that subtotal sum, and find 30% of it, 0.3 times that amount. And whose diminution value are you using? Schweitzer's, which was based on the same negative factors that Mr. Grewell and he agreed applied to this property. So that diminution value, did that take into account these add-ons, these improvements that were in your experts' calculations? Yes. My calculations do take it into account. Well, no, because you're using a different expert's diminution value, right? Right. So in calculating that diminution value, did it take into account that improvements you put in your number, remember that add-on number you did the residential because you couldn't find any comparable commercial. You had the residential, then you said you added on improvements and additional buildings. Would that affect at all the diminution value? No. No, because Mr. Grewell used the cost approach, which is to take residential comparative sales. Schweitzer's diminution value, would it change his? Pardon? Would it change his value? Because you're using another expert's value for diminution, right? We used another expert's value for the jury. We believe the jury did based on this calculation. And then after that, they did one more step. They added in the value of the temporary easement, which Mr. Thompson provided at $3,117. That's the final step. But to answer your question, and I want to make sure I understand it, the use of the comparable sale took into account land and improvements on that land for a per acre comparable sale value. On this property, Mr. Grewell appraised the land somewhat separately from the improvements. His land calculation at $2,900 per acre did not include the improvements. That was a separate add back in. But the sales, the strict sales comparative approach and the cost approach, there's nothing in the record to indicate they would come up with different numbers. They're just different approaches, but they're designed to come up with the before take value in the market of people that want to buy but don't have to buy, people that want to sell but don't have to sell. I mean, that's the equation. Did you make this argument to the district court in terms of how they could have come up with this without using expert Grewell? Did you make that argument? My colleague argued against their position, that it was a commercial highest and best use that the jury applied. And he argued against that. But in terms of these specific numbers, I derived these numbers in terms of... My question is no. Correct. And our position is that it's not a matter of getting into the jury's mind.  Based on residential sales comparison and the factors that diminished the residential use value of this property. And Schweitzer and Grewell were in agreement on that. What about Mr. Massey's point that there was an alternative ruling by the district court that the verdict was against the weight of the evidence? The district court put all eggs in one basket as to the Rule 50 and Rule 59 motion based on the central premise that the jury incorporated a highest and best commercial use. If you read the court's opinion, that's the only ground on which the court relied in order to make its judgment. Because, I mean, to be fair to the district court, the district court didn't have the calculation that you gave us here today. The district court had all these numbers. It was part of the larger corpus of trial evidence that was given to the jury to evaluate. And what our goal here is, is to demonstrate to the court that the district court made an error in not presuming that jurors followed their instructions and presuming that they somehow used a commercial highest and best use value when the other numbers that were in the corpus of evidence clearly allowed them to come to the verdict they did at $523,327. The math that I've provided comes out to $523,329, $2 difference. And we assert that it's supported by the record. The verdict is supported by the record. And the central premise relied upon by the district court is not supported by the record. And, Judge Thacker, a final point on that. The memorandum opinion of the district court relied entirely on the central premise that the jury applied a commercial highest and best use value to a residential diminution of value. I'd have lots more to say, but my time is up. There are a few points I'd make if I had the permission to use it. Well, I mean, is this something you can do in two or three minutes? Yes. Go ahead. All right. All of Mr. Gruel's comparables were residential. That's important to remember. He didn't jack up the per acre price based on a commercial value. He based his $2,900, which the jury didn't use, but he based his $2,900 on residential commercial sales. The motion that was made for interest and costs under Virginia law was for interest and costs. It wasn't to go back and try to redetermine just compensation. Mr. Massey and I do agree that the Virginia and the federal rule is not significantly different on the amount of just compensation. But the motion asked that interest and fees under state law be applied to the judgment amount. And it is separate. It's not part of this verdict question. It's a separate question. Mr. Sherman filed a motion in the alternative, and that's what the court simply ignored. And your question, Judge Gregory, about is this a final judgment, it is a final judgment. The district court just did a pocket veto to this motion. It just ignored it, didn't rule upon it at all. So it's not that something was pending for decisional purposes. The court just didn't address it at all, and sub salento overruled it. The rule is that we always presume that jurors follow their instructions, and their instructions allowed them to come to the conclusions that they did. And when the district court relied upon a central premise that was incorrect, that is, as a matter of law, per the cases we've cited to the court, an abuse of discretion. And an abuse of discretion under Rule 59 is an error of law as well under Rule 50. If the court has any further questions, I'll be happy to answer them. Thank you, Mr. Thomas and Mr. Massey. Appreciate your arguments. All right. We'll proceed to our next case. I will after we shake your hands. Okay. My good friend, Judge Griggs. My good friend, Judge Griggs.
judges: Roger L. Gregory, James Andrew Wynn, Stephanie D. Thacker